# United States Court of Appeals
## For the First Circuit

_____

No. 25-1309

UNITED STATES OF AMERICA, ex rel. REYNALDO SOLANO AND NEALS
MAXILIN; STATE OF CALIFORNIA, STATE OF FLORIDA, STATE OF
ILLINOIS, COMMONWEALTH OF MASSACHUSETTS, STATE OF
MICHIGAN, STATE OF NEW JERSEY, STATE OF NEW YORK, STATE OF
TEXAS, ex rel. REYNALDO SOLANO AND NEALS MAXILIN,

Plaintiffs-Appellants,

v.

BARTON ASSOCIATES, INC.,

Defendant - Appellee,

MEDTECH WORLDWIDE, INC.; REALTIME PHYSICIANS, LLC;
OCENTURE, LLC; CARELUMINA, LLC,

Defendants.

_____

Appeal from the United States District Court
for the District of Massachusetts

_____

**APPELLEE'S RESPONSE BRIEF**

_____

Jordan Bock (1st Cir. Bar No. 1216631)
Kevin Martin (1st Cir. Bar No. 89611)
Miranda Hooker (1st Cir. Bar No. 105349)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
jbock@goodwinlaw.com

September 10, 2025

*Counsel for Barton Associates, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Counsel for Defendant-Appellee Barton Associates, Inc. ("Barton") states as follows:

Barton's sole parent company is H.I.G. Capital LLC, a private company wholly owned by H.I.G. Capital Partners LP. No publicly held corporation owns 10% or more of H.I.G. Capital Partners LP.

Dated: September 10, 2025

/s/ *Jordan Bock*
Jordan Bock

*Counsel for Barton Associates, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................1

STATEMENT OF THE ISSUES..............................................................3

STATEMENT OF THE CASE.................................................................4

SUMMARY OF ARGUMENT ...............................................................8

STANDARD OF REVIEW ...................................................................11

ARGUMENT ........................................................................................12

I.  The district court properly dismissed the FCA claim with prejudice. .........13

    A.  Relators' complaint did not satisfy the Rule 9(b) standard
    for pleading fraud with particularity. ......................................14

    B.  The district court properly dismissed the complaint with
    prejudice. ..................................................................................23

II.  The district court properly denied Relators' motion for
reconsideration...................................................................................30

    A.  Relators misrepresent First Circuit precedent.........................30

    B.  Relators were not entitled to a post-judgment opportunity
    to amend. ...................................................................................36

CONCLUSION .....................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3137, LLC v. Town of Harwich*,
  126 F.4th 1 (1st Cir. 2025)............................................................13, 37

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008)................................... 29, 32, 34, 35, 37, 38

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS
  Health Corp.*,
  46 F.4th 22 (1st Cir. 2022).........................................................11

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001) .......................................................38, 39

*Davila-Alvarez v. Escuela de Medicina Universidad Central del
  Caribe*,
  257 F.3d 58 (1st Cir. 2001)..........................................................33, 34

*United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*
  579 F.3d 13 (1st Cir. 2009)........................ 1, 6, 14, 15, 16, 17, 22, 23, 39, 40, 41

*Foman v. Davis*,
  371 U.S. 178 (1962).................................................................31, 32

*United States ex rel. Gadbois v. PharMerica Corp.*,
  809 F.3d 1 (1st Cir. 2015)............................................................28

*U.S. ex rel. Gagne v. City of Worcester*,
  565 F.3d 40 (1st Cir. 2009)...........................................................21

*United States ex rel. Ge v. Takeda Pharm. Co.*,
  737 F.3d 116 (1st Cir. 2013).....................................................*passim*

*Gonzalez v. Banco Central Corp.*,
  27 F.3d 751 (1st Cir. 1994).........................................................29

*Gray v. Evercore Restructuring L.L.C.*,
  544 F.3d 320 (1st Cir. 2008)........................................................11, 24

iv

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ...............................................................14

*James v. Watt*,
    716 F.2d 71 (1st Cir. 1983) (Breyer, J.).............................................38

*Juárez v. Select Portfolio Servicing, Inc.*,
    708 F.3d 269 (1st Cir. 2013)..........................................................28, 29

*United States ex rel. Kelly v. Novartis Pharms. Corp.*,
    827 F.3d 5 (1st Cir. 2016)................... 9, 14, 15, 20, 22, 41, 42

*Maldonado v. Dominguez*,
    137 F.3d 1 (1st Cir. 1998)....................................................................38

*Marie v. Allied Home Mortgage Corp.*,
    402 F.3d 1 (1st Cir. 2005)....................................................................36

*O'Connell v. Hyatt Hotels of P.R.*,
    357 F.3d 152 (1st Cir. 2004)................................................................11

*Palmer v. Champion Mortg.*,
    465 F.3d 24 (1st Cir. 2006)....................................................11, 35, 36

*Pomerleau v. W. Springfield Pub. Schs.*,
    362 F.3d 143 (1st Cir. 2004)................................................................36

*Rodi v. So. New England Sch. of Law*,
    389 F.3d 5 (1st Cir. 2004)....................................................................15

*United States ex rel. Rost v. Pfizer, Inc.*,
    507 F.3d 732 (1st Cir. 2007)........................................................16, 17

*Ruiz Rivera v. Pfizer Pharms., LLC*,
    521 F.3d 76 (1st Cir. 2008)..................................................................11

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
    707 F.3d 95 (1st Cir. 2013)........................................................26, 27, 32

*Hagerty ex rel. United States v. Cyberonics, Inc.*,
    844 F.3d 26 (1st Cir. 2016)................... 6, 13, 14, 18, 19, 20, 21, 23, 42

*Lawton ex rel. United States v. Takeda Pharm. Co.*,
842 F.3d 125 (1st Cir. 2016)............................................................11, 14, 15, 22

*United States v. Zannino*,
895 F.2d 1 (1st Cir. 1990)....................................................................37

*Wayne Inv., Inc. v. Gulf Oil Corp.*,
739 F.2d 11 (1st Cir. 1984)..............................................................24, 25

**Statutes**

31 U.S.C. § 3729(a)(1).....................................................................13, 14

31 U.S.C. § 3729(a)(1)(A) ...................................................................6, 13

**Other Authorities**

11 Charles Alan Wright et al., Fed. Prac. & Proc. § 2810.1 (2d ed.
1995) ..................................................................................................35

Fed. R. Civ. P. 9(b) ..............................................................................14

Fed. R. Civ. P. 15(a)..............................................................................37

## INTRODUCTION

Barton Associates, Inc. ("Barton") is a staffing agency: It connects doctors and other health care professionals seeking temporary work with health care organizations seeking temporary staffing. Barton does not itself employ physicians, treat patients, write prescriptions, or submit reimbursement claims to federal or state governments. It was nevertheless sued in a 2020 *qui tam* action by Relators Reynaldo Solano and Neals Maxilin, who alleged that Barton had violated the False Claims Act ("FCA") based on the submission of purportedly false reimbursement claims.

Relators' complaint is a prime example of the "opportunistic behavior" and potential for "abuse" that Rule 9(b) helps police. *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.* 579 F.3d 13, 16 (1st Cir. 2009). In Relators' telling, Barton orchestrated a scheme whereby Barton-supplied physicians would prescribe treatments for patients they never saw or spoke to, Barton's clients would submit claims for those treatments to payors like Medicare, and the clients would pay Barton $40 per claim. Relators' complaint described only a single instance of a Barton-supplied physician providing such a prescription, and even then included no allegation that the treatment was medically unnecessary or that a claim was submitted to a *government* payor specifically. The district court correctly recognized that Relators' allegations fell far short of Rule 9(b)'s particularly requirement for

1

fraud and dismissed the complaint with prejudice. Relators sought reconsideration, including a belated opportunity to amend their complaint. The district court denied the motion.

Relators' arguments have grown only weaker on appeal and this Court should affirm. Relators argue that the district court misapplied the "flexible" standard under Rule 9(b) and the FCA for cases involving claims submitted by a third party, but the district court's opinion on its face expressly—and correctly—applies the exact standard Relators now invoke. If anything, Relators' allegations are far less developed than the FCA allegations this Court has previously deemed insufficient for third-party claims under Rule 9(b).

Relators' arguments trend downhill from there. Relators object to the district court's dismissal of their claims with prejudice, but Relators never actually moved for leave to amend their complaint before judgment (mentioning only the possibility of amendment at oral argument). Relators instead rolled a request for leave to amend into a post-judgment motion for reconsideration, which the district court properly denied. Relators maintain that it was a per se abuse of discretion for the district court to deny their motion for reconsideration without a written explanation, but this Court has repeatedly rejected that exact argument. In the face of binding precedent from this Court that forecloses both their amendment and reconsideration arguments, Relators repeatedly invoke authority that is at best irrelevant, and often directly

contrary to their positions. That includes a trio of purported quotations that do not appear in the cited cases, do not paraphrase anything said by the cited cases, and, as far as Barton can tell, do not even appear in any available decision from any court anywhere in the country.

In short, the district court correctly granted the motion to dismiss. It then acted well within its discretion in denying Relators' belated amendment request and motion for reconsideration. The judgment of the district court should be affirmed in its entirety.

## STATEMENT OF THE ISSUES

1. Whether the district court properly dismissed Relators' claims under the False Claims Act where Relators failed to provide sufficient factual allegations to support an inference that Barton caused the submission of false claims to the government.

2. Whether the district court erred in not providing Relators leave to amend where Relators never properly moved for leave to amend prior to dismissal of their claims.

3. Whether the district court erred in denying Relators' motion for reconsideration in a summary order where Relators' motion did not identify any manifest error of law or newly discovered evidence.

## STATEMENT OF THE CASE

Barton is a placement agency that facilitates "locum tenens" (*i.e.*, temporary) staffing of healthcare professionals, including physicians and physician assistants, at hospitals and other medical practices across the country. A13 (¶ 15). Barton does not employ physicians, offer medical care, or submit claims to the government for reimbursement for medical care. *See id.*

In 2020, Relators filed this *qui tam* action on behalf of the United States and several states alleging that Barton and several co-defendants violated the FCA and a set of analogous state statutes. A71. As relevant here, Relators' complaint alleges that an account manager at Barton informed Solano that Barton "encourages" recruited individuals or entities to solicit patients who are "eligible for Medicare or other government-funded health plans" for certain medical treatments. A20 (¶¶ 51-54). According to the complaint, the client then forwards the patient's information to Barton, which "assigns the matter to one of its own physicians who prescribes the service or product." A20-21 (¶ 55). Barton physicians "must review the requests" and "be allowed to reject" them, but Relators allege that, in practice, the physicians approve the vast majority of prescriptions. A21 (¶ 56). Barton then collects a $40 "assessment fee" for each item or service prescribed for a patient, while the recruited client is reimbursed "from Medicare or other Government-funded health plan." A21 (¶ 57). Barton allegedly has several clients engaged in this practice, including co-

defendants MedTech Worldwide, Inc. ("MedTech"), RealTime Physicians, LLC ("RealTime"), Ocenture, LLC, and CareLumina LLC. *Id.* (¶¶ 58-60).

The remainder of the complaint details allegedly fraudulent conduct engaged in by *other* parties. Relators assert that Barton placed health care professionals with MedTech and RealTime, where those professionals allegedly prescribed unnecessary products and services without having evaluated patients. A21 (¶ 59). But Relators otherwise plead no facts connecting Barton to MedTech and RealTime. *See id.* To the contrary, they allege that MedTech and RealTime defrauded Barton by plagiarizing the signature of a Barton physician *without Barton's knowledge* precisely so that MedTech and RealTime could falsify prescriptions and avoid paying Barton for physician review. A22 (¶¶ 61, 64-66). Relators likewise allege that Ocenture and CareLumina engaged in the purported fraudulent reimbursement scheme, but Relators fail to plead any facts supporting an inference of misconduct *by Barton* in connection with that scheme. A23-24 (¶¶ 71-76). At most, the complaint alleges that Ocenture and CareLumina "dealt directly with Barton *physicians* to sign the orders for" unnecessary treatments, specifically cancer screening tests. A23 (¶ 73) (emphasis added). The only allegations of actual misconduct—*i.e.*, that those entities paid patients to take unnecessary cancer screening tests and then billed Medicare or other government-funded health programs for reimbursement—do not suggest any wrongdoing by Barton. *Id.* (¶ 72).

Based on these allegations, Relators raised five claims under the FCA. That includes, as relevant to this appeal, the presentation of false claims under 31 U.S.C. § 3729(a)(1)(A), which applies where a defendant has "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government … a false or fraudulent claim for payment or approval." A25-26 (¶¶ 83-85). The complaint also raised a set of claims under analogous state FCA statutes. The United States declined to intervene in the action, and Barton moved to dismiss. A71.

Following a hearing, the district court granted the motion in full. The court first noted the distinction between a *qui tam* action alleging that the defendant directly made false claims to the government and an action where "the defendant induced *third parties* to file false claims with the government." A74 (quoting *Duxbury*, 579 F.3d at 29). Placing this case in the latter "indirect claim" category, the court explained that a "complaint that does not provide sufficient facts regarding false claims 'may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" A74 (quoting *Duxbury*, 579 F.3d at 29).

Here, however, the court determined that Relators' allegations failed even "this more accommodating standard." A74 (quoting *Hagerty ex rel. United*

*States v. Cyberonics, Inc.*, 844 F.3d 26, 31 (1st Cir. 2016)). As the court explained, "while the relators allege a scheme involving misconduct by various actors, they do so at too high a level of generality." A74. "Beyond a general outline of a fraudulent scheme, the complaint is minimal as to any details about specific false claims and lacks reliable indicia that lead to a strong inference that claims were actually submitted in this manner." *Id.* In particular, the complaint fails to allege any "rough time periods, locations, or amounts of fraudulently submitted claims, nor … any identification of the specific government programs to which such claims were made other than the boilerplate references to Medicare and other government programs." *Id.*

The district court dismissed the claims with prejudice. Prior to dismissal, Relators had not moved for leave to amend, nor requested leave to amend in their opposition to the motion to dismiss. Relators' sole mention of amendment came in passing at the end of the hearing on the motion to dismiss, when Relators briefly requested leave to amend "in the event that this Court does not find [their] arguments persuasive or that it otherwise deem[s] it necessary to dismiss parts of the complaint." A122 (24:2-6).

Relators subsequently moved for reconsideration under Federal Rule of Civil Procedure 59(e). A82. The motion requested that the court either vacate its dismissal or, in the alternative, provide Relators an opportunity to file an amended

complaint.  A86.  Relators argued that they could cure the deficiencies in the original complaint based on allegations that purportedly identified the time period at issue and the government programs to which the claims were submitted, expanded the allegations surrounding the single false claim identified in the complaint, and "articulate[d] the grounds for the strong inference that Barton's rubber-stamping scheme resulted in the actual submission of false claims."  A96.

The district court denied Relators' motion for reconsideration in a summary order on February 26, 2025.  This appeal followed.

## SUMMARY OF ARGUMENT

I.    The district court properly dismissed Relators' FCA claim with prejudice because the complaint's factual allegations did not support an inference "that false claims were submitted for government payment as a result of the defendant's alleged misconduct."  *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 124 (1st Cir. 2013) (citation and internal quotations omitted).  Applying the "more flexible" version of Rule 9(b) governing allegations that a "defendant caused a third party to submit a claim to the government," the district court correctly determined that Relators' complaint "is minimal as to any details about specific false claims and lacks reliable indicia that lead to a strong inference that claims were actually submitted in this manner."  A74.  In particular, Relators had failed to include "the rough time periods, locations, and amounts of the

fraudulently submitted claims," and "the specific government programs to which the" allegedly fraudulent claims were made.  A74-75 (citing *United States ex rel. Kelly v. Novartis Pharms. Corp.*, 827 F.3d 5, 13-14 (1st Cir. 2016) (citation and internal quotations omitted)).

Relators criticize the district court for requiring them to identify specific fraudulent claims, but Relators misquote the district court's decision.  Contrary to Relators' representation, the district court expressly recognized that Relators could survive a motion to dismiss without "providing details as to each false claim."  A74. Relators' barebones allegations were nonetheless insufficient to support an inference that Barton caused false claims to be submitted, and the district court thus properly dismissed the complaint.

In so doing, the district court did not err in declining to provide Relators with leave to amend.  Relators never filed a motion for leave to amend, nor did they request an opportunity to amend in their opposition to the motion to dismiss. Relators' passing statement at the end of the motion to dismiss hearing—which provided no detail and failed to explain how Relators would remedy the identified deficiencies in their allegations—was insufficient.  The authorities Relators cite to argue that the district court was required to provide them leave to amend are entirely off-base, including one quote purportedly from this Court that does not appear in or even paraphrase the cited case, or appear in any decision from any court anywhere.

The district court thus acted well within its discretion in not providing Relators an opportunity to amend before dismissing their claims with prejudice.

II.    The district court did not err in denying Relators' motion for reconsideration and accompanying request for leave to amend. The crux of Relators' argument is that this Court must reverse because the district court denied the motion for reconsideration without an accompanying written order. But this Court repeatedly has recognized that it can affirm the summary denial of a motion for reconsideration—and, with respect to amendment specifically, that the district court's denial of leave to amend can be affirmed on any basis apparent in the record. Once again, Relators rely on entirely inapposite caselaw and purported quotations that appear not to exist anywhere.

To the extent Relators intend to raise a separate challenge to the merits of the motion for reconsideration, this argument fails as well. Relators do not develop any specific arguments as to why the district court should have granted their motion for reconsideration, and Relators have thus waived any argument to that effect. Even putting that aside, Relators have failed to identify any new allegations that remedy the deficiencies in their complaint—in particular because Relators must clear the high bar necessary to show entitlement to reconsideration under Rule 59(e).

## STANDARD OF REVIEW

The district court's grant of a motion to dismiss is reviewed de novo. *See Lawton ex rel. United States v. Takeda Pharm. Co.*, 842 F.3d 125, 130 (1st Cir. 2016).

Where a plaintiff moves for leave to amend, the district court's denial of that motion is reviewed for abuse of discretion. *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 327 (1st Cir. 2008). This Court will affirm denial of a motion for leave to amend "if any adequate reason for the denial is apparent from the record." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004).

The district court's denial of a motion for reconsideration under Rule 59(e) is reviewed for "manifest abuse of discretion." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022); *see also Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81 (1st Cir. 2008) (explaining that this standard applies "because the district court has substantial discretion and broad authority to grant or deny such a motion"). This Court has repeatedly recognized that the "granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" *City of Miami Fire Fighters' & Police Officers' Ret. Tr.*, 46 F.4th at 36 (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)).

# ARGUMENT

The district court properly resolved the two motions at issue on appeal. First, the court correctly granted Barton's motion to dismiss, recognizing that the complaint's vague and barebones allegations were insufficient to state an FCA claim under Rules 9(b) and 12(b)(6), even under the more "flexible" standard for claims involving reimbursement requests submitted by third parties. Because Relators did not properly move for leave to amend pre-judgment, the court was well within its discretion to dismiss the claims with prejudice. Second, the court properly denied Relators' motion for reconsideration, which did not raise any colorable reason for vacating the judgment.

Relators have failed to identify any basis for disturbing these decisions. While Relators accuse the district court of misapplying the "more flexible" standard for claims alleging third-party inducement under the FCA, the court carefully applied that exact standard. Relators' problem is not the law, but the facts: Their complaint comes nowhere near satisfying Rule 9(b), and they failed to timely request an opportunity to amend prior to dismissal. Relators' arguments are even further afield with respect to the motion for reconsideration. Relators' sole argument on appeal is that the district court committed a per se error by denying the motion for reconsideration without an accompanying written order. This Court has held the

exact opposite, and Relators significantly misrepresent their cited authorities—including relying on quotes that do not exist.  This Court should affirm.

## I.    The district court properly dismissed the FCA claim with prejudice.

To state a claim under the relevant provision of the FCA, a relator must allege that the defendant "present[ed], or caus[ed] to be presented, a false or fraudulent claim for payment or approval" to the federal government.  31 U.S.C. § 3729(a)(1); *see also Hagerty*, 844 F.3d at 31.[1]  Relators have failed to do so here.  As the district court explained in its thorough opinion, the complaint's vague allegations are insufficient under Rule 9(b) to support an inference "that false claims were submitted for government payment as a result of the defendant's alleged misconduct."  *Ge*, 737 F.3d at 124 (citation and internal quotations omitted).  And because Relators failed to properly request leave to amend—or to explain, pre-judgment, how they would address the identified deficiencies—the district court properly dismissed the complaint with prejudice.

---

[1] While the complaint raises a set of thirteen federal and state claims, the sole claim Relators raise on appeal is submission of false claims under § 3729(a)(1)(A). Opening Br. 9.  Relators have thus waived any challenge to the district court's dismissal of their other claims, and in particular the FCA claims based on entirely different theories of liability.  *See, e.g.*, *3137, LLC v. Town of Harwich*, 126 F.4th 1, 9 n.4 (1st Cir. 2025) (Court will "deem … waived" an argument that is "not adequately briefed" on appeal).

**A.** **Relators' complaint did not satisfy the Rule 9(b) standard for pleading fraud with particularity.**

1. FCA claims involving submissions for payment by third parties must pass muster under a more "flexible" Rule 9(b) standard.

"[F]raud under the FCA has two components: the defendant must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent." *Hagerty*, 844 F.3d at 31. Rule 9(b) requires the complaint to "state these components with 'particularity,' meaning relators … must allege the 'who, what, when, where, and how of the alleged fraud.'" *Id.* (quoting *Ge*, 737 F.3d at 123); *see also* Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity the circumstances constituting fraud"). Thus, for a claim under § 3729(a)(1), "Rule 9(b) requires both that the circumstances of the alleged fraud and the claims themselves be alleged with particularity." *Lawton*, 842 F.3d at 130.

Where a relator alleges that the defendant "induced *third parties* to file false claims with the government," the relator can satisfy Rule 9(b) "without necessarily providing details as to each false claim." *Duxbury*, 579 F.3d at 29; *see supra*, p. 6. To do so, however, the relator must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Duxbury*, 579 F.3d at 29 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)); *see also Kelly*, 827 F.3d

at 13-14 (explaining that a complaint governed by the more "flexible" standard must still "identify the alleged fraud with a significant degree of specificity") (internal quotations omitted). This standard "generally requires the relator to plead … 'specific medical providers who allegedly submitted false claims,' the 'rough time periods, locations, and amounts of the claims,' and 'the specific government programs to which the claims were made.'" *Kelly*, 827 F.3d at 13 (quoting *Ge*, 737 F.3d at 121, 124); *see also Lawton*, 842 F.3d at 130-131 (reiterating this same requirement); *Rodi v. So. New England Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (requiring allegations of "the who, what, where, and when of the allegedly false or fraudulent representation"). "[F]actual or statistical evidence" can help "strengthen the inference of fraud beyond possibility without necessarily providing details as to each false claim," but the fraud itself must still "be pled with particularity." *Kelly*, 827 F.3d at 13 (citations omitted).

*Duxbury* is instructive. While the allegations in *Duxbury* were a "close call," this Court concluded that the relator had sufficiently "alleged facts that false claims were in fact filed by the medical providers he identified"—including "eight medical providers (the who), the illegal kickbacks (the what), the rough time periods and locations (the where and when), and the filing of the false claims themselves." 579 F.3d at 30-31. By way of example, the *Duxbury* relator alleged that Western Washington Treatment Center had "received more than $5,000 of free commercially

packaged [drug] ProCrit" from the defendant "*so that* Western Washington could submit the free product for reimbursement to Medicare under the false and fraudulent certification that the provider had paid for the product," and further that "Western Washington *was reimbursed* by Medicare for the free commercially packaged ProCrit." *Id.* at 31 (quoting from the *Duxbury* plaintiff's amended complaint).

This Court distinguished these allegations from the allegations in *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 732 (1st Cir. 2007), which "gave rise to only speculation as to whether the alleged scheme caused the filing of false claims with the government." *Duxbury*, 579 F.3d at 31. The relators in *Rost* asserted that "false claims were allegedly submitted by doctors who were allegedly induced and seduced by defendants into prescribing Genetropin for off-label uses to their patients, including federally insured patients." 507 F.3d at 732. Even accepting that these facts "suggest[ed] fraud was *possible*," the complaint did not support an inference that the doctors who prescribed the off-label drug actually sought federal reimbursement for those drugs, nor did the complaint establish that the physicians prescribed the drug for off-label uses to Medicare patients specifically. *See id.* at 733 (emphasis added). Thus, "Rost did not plead enough to satisfy the concerns behind Rule 9(b)," and specifically failed to "establish that false claims were submitted for government payment in a way that satisfies the particularity

requirement." *Id.*; *see also Duxbury*, 579 F.3d at 29-30 (comparing the allegations between the two cases). Because the complaint did "not sufficiently establish that false claims were submitted for government payment in a way that satisfies the particularly requirement," this Court affirmed dismissal of the complaint. *Rost*, 507 F.3d at 733.

### 2. Relators failed to allege sufficient factual details to support the alleged scheme under Rule 9(b).

Applying these principles, the district court properly dismissed the complaint. In relevant part, Relators' complaint alleges that an account manager at Barton described to Solano a purported scheme by which Barton's clients solicit patients to whom Barton physicians can prescribe certain services or products. A20-21 (¶ 55); *see supra*, pp. 4-6. The Barton physicians review and, according to the complaint, nearly always approve the prescription request. A21 (¶ 56). Barton then collects a $40 "assessment fee" for each item or service prescribed for a patient, while the recruited client is reimbursed "from Medicare or other Government-funded health plan." A21 (¶ 57). That is effectively it for the allegations against Barton.

The remainder of the complaint focuses on allegations against other companies. Specifically, the complaint identifies two sets of companies—MedTech and RealTime in one group and Ocenture and CareLumina in the other—that it says participated in the scheme. A21-24 (¶¶ 59-76). As to MedTech and RealTime, the complaint alleges that the companies initially joined the scheme, A21 (¶¶ 59-60),

before cutting Barton out of the loop. According the complaint, the companies were "unhappy with the financial arrangement they had with Barton," and therefore "use[d] photoshop to plagiarize doctors' and patients' signatures along with the dates on the authorization and consent forms instead of obtaining—and paying for—a prescription from a Barton physician." A22 (¶ 61). With respect to Ocenture and CareLumina, the complaint alleges that they "dealt directly with Barton physicians to sign the orders for" cancer screening tests for which they could then bill "Medicare or other government-funded health programs for reimbursement." A23 (¶¶ 73-74).

The allegations against Barton do not cut it under this Court's caselaw. Take this Court's decision in *Hagerty*, 844 F.3d at 32-33. At bottom, the relators there alleged "that three healthcare providers … had patients who were 'seriously disabled' and eligible for various government healthcare programs, and that the [vagus nerve stimulator] replacement surgeries conducted on those patients necessarily resulted in the submission of at least some false reimbursement claims." 844 F.3d at 33. This Court agreed with the district court that these allegations were insufficient, because they failed to allege "that the patients were actually covered by government programs or that certain replacement procedures conducted on these patients were medically unnecessary." *Id.* These allegations thus "proceed[ed] more

by insinuation than any factual or statistical evidence that would strengthen the inference of fraud beyond possibility." *Id.*

The same is true here. Under Relators' theory, Barton's clients prescribed treatments to patients, that some number of those patients must have been on government-funded health plans, and so some number of false prescriptions must have been submitted for reimbursement. *See* A20-21 (¶¶ 51-58). Relators allege, for example, that MedTech and Realtime "were obtaining 'tens of thousands' of dollars in prescriptions every month for genetic testing, durable medical equipment and pain cream prescriptions for Medicare-eligible patients from Barton physicians and then seeking reimbursements for those prescriptions." A21 (¶ 60). As the district court recognized, however, "the relators do not allege that all prescriptions were written without a doctor-patient relationship, that they were medically unnecessary, that the patients were enrolled in (as opposed to eligible for) Medicare, or that the claims to Medicare were submitted for unnecessary prescriptions." A75. These allegations thus "proceed more by insinuation than any factual or statistical evidence that would strengthen the inference of fraud beyond possibility." *Hagerty*, 844 F.3d at 33 (rejecting a similar allegation of "over 10,000 medically unnecessary and unreasonable [medical] device replacements") (citation omitted). Put differently, "[m]erely alleging that a scheme was wide-ranging—and,

therefore, that a fraudulent claim was presumably submitted—will not suffice" under Rule 12(b)(6). *Kelly*, 827 F.3d at 13-14.

The same is true for Relators' allegations that co-defendants Ocenture and CareLumina "perform between 8,000 and 10,000 cancer-screening tests per month." A24 (¶ 75). The complaint vaguely alleges that these companies "dealt directly with Barton physicians to sign the orders for the cancer screening tests," A23 (¶ 73), but, as the district court explained, Relators do not allege how many of the 8,000 to 10,000 tests were conducted "based on prescriptions by Barton physicians," nor do they allege that these tests "were made without a patient-client relationship[] or were medically unnecessary, that they were for patients enrolled in Medicare, or that claims for that volume of tests were submitted to Medicare." A75-76. "[W]ithout any allegation that the patients were actually covered by government programs or that certain replacement procedures conducted on these patients were medically unnecessary," Relators have "at most … only raised facts … suggesting fraud was possible." *Hagerty*, 844 F.3d at 33 (citation and alterations omitted).

The complaint has only a single "example of the scheme in action," and it lacks crucial details. A74-75. Relators allege that, on January 10, 2019, co-defendants "MedTech and RealTime requested that Barton generate a prescription for a comprehensive panel of genetic tests for patient M.D." A22 (¶ 62). Relators further allege that the "Barton-contracted physician who signed the prescription,

Rodney Sosa, never met, saw or communicated with the patient." *Id.* (¶ 63). That is the sum total of the allegations relevant to Barton. As the district court recognized, "the complaint does not allege that the patient was enrolled in Medicare, that Barton received any assessment fee or kickback for approving the prescription, that the prescription was medically unnecessary, or that the recruited client submitted a claim for the patient to Medicare." A75. Thus, the complaint lacks effectively all of the allegations necessary to make out a claim under the FCA—including, in particular, allegations that the claim was in fact fraudulent and was in fact submitted for payment to the government. *See Hagerty*, 844 F.3d at 33 & n.5 (refusing to credit allegation regarding a particular patient where there was "no indication that [he] was an actual Medicare recipient, that his replacement surgery was unnecessary, or that any false claim was submitted on his behalf"); *see also U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 47 (1st Cir. 2009) (explaining "that it is the fraud itself which must be pled with particularity, not just who benefits from the fraud").

The district court thus properly concluded that the complaint failed to state a claim under this Court's precedents. A74-75. As the district court explained, "while the relators allege a scheme involving misconduct by various actors, they do so at too high a level of generality." A74. "Beyond a general outline of a fraudulent scheme, the complaint is minimal as to any details about specific false claims and lacks reliable indicia that lead to a strong inference that claims were actually

submitted in this manner." *Id.* The "purported clients are identified, but there are no rough time periods, locations, or amounts of fraudulently submitted claims, nor is there any identification of the specific government programs to which such claims were made other than boilerplate references to Medicare and other governmental programs." A74; *see also Kelly*, 827 F.3d at 13-14 (requiring the relator to allege "the 'rough time periods, locations, and amounts of the claims,' and 'the specific government programs to which the claims were made'") (quoting *Ge*, 737 F.3d at 121, 124)); *see also Lawton*, 842 F.3d at 130-131.

### 3. Relators misrepresent the district court's opinion.

The crux of Relators' argument on appeal is that the district court erred by "failing to apply the 'more flexible' standard" governing third-party inducement claims. Opening Br. 1. That criticism is entirely untethered from the court's order. As described above, the court first determined that the "more accommodating" third-party inducement standard governed Relators' allegations. A74; *see supra*, p. 6. The court then followed *Duxbury* and this Court's subsequent precedents to a T, explaining that—under those decisions—the complaint "lacks reliable indicia that lead to a strong inference" that Barton caused the submission of false claims. A74. In particular, "there are no rough time periods, locations, or amounts of fraudulently submitted claims, nor is there any identification of the specific government programs to which such claims were made other than boilerplate references to Medicare and

other governmental programs." A74. The court thus concluded that Relators had failed to support an "inference that [false] claims were actually submitted," as *Duxbury* requires. A74 (citing *Duxbury*, 579 F.3d at 29).

Relators assert that the district court faulted their complaint for failing "to identify 'a single claim' that was 'actually submitted for reimbursement' (JA 75)." Opening Br. 12. But neither of the supposedly quoted phrases actually appears in the district court's opinion. To the contrary, the district court expressly recognized that Relators could satisfy the "more accommodating standard … without necessarily providing details as to each false claim." A74 (quoting *Hagerty*, 844 F.3d at 31). Relators' argument on appeal is thus entirely disconnected from the court's actual reasoning—including its application of the precise caselaw Relators invoke. *See* Opening Br. 11-12.

## B. The district court properly dismissed the complaint with prejudice.

Relators argue that, at a minimum, the district court should have provided them leave to amend rather than dismissing their complaint with prejudice. Opening Br. 13-14. But the sum total of Relators' prejudgment effort at amendment consisted of a passing statement at the tail end of oral argument on the motion to dismiss: Relators never moved for leave to amend, nor did they request leave in their opposition to Barton's motion to dismiss. Even when Relators finally did request an opportunity to amend at argument, they provided no explanation of how they might

try to resolve the deficiencies in their complaint or what additional factual allegations they could offer.

### 1. Relators never properly moved for leave to amend.

Relators argue that the district court should have granted them leave to amend under the "liberal standard" of Rule 15(a)(2). Opening Br. 13. But this standard applies only "[w]hen a motion to amend is *properly* made before entry of judgment." *Ge*, 737 F.3d at 127 (emphasis in original). Where the plaintiff fails to move for leave to amend, "the district court cannot be faulted for failing to grant such leave *sua sponte*." *Gray*, 544 F.3d at 327. In other words, "[a]lthough a court's denial of a motion to amend is typically reviewed for an abuse of discretion," there is nothing to review if "the district court neither granted nor denied a motion to amend … because [Relators] never moved to file" an amended complaint. *Id.* In that sense, the possibility of amendment is not even properly before the Court on appeal where a motion to amend "was never made and never denied, so the plaintiff has no ruling from which to appeal." *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 15 (1st Cir. 1984).

Importantly, a request for leave to amend in an opposition to a motion to dismiss is insufficient. This Court has repeatedly held that a request to amend embedded in an opposition "does not constitute a motion to amend a complaint." *Gray*, 544 F.3d at 327 (refusing to act on statement in opposition that "in the event

that the Court finds that the Amended Complaint fails to state a claim, Plaintiff requests leave to replead"); *see also Ge*, 737 F.3d at 127 (request to amend included in opposition to motion to dismiss "was not properly made"); *Wayne Inv.*, 739 F.2d at 14-15 (explaining that an "exchange of footnotes" in the motion to dismiss briefing does not "constitute[] a motion to amend the complaint sufficient to preserve the issue for appeal").

Here, Relators' argument fails out of the gate because they never moved for leave to amend—and while a request made in an opposition to a motion to dismiss does not suffice, Relators did not even do that much. Rather, Relators' sole pre-judgment request for leave to amend came in passing at the tail end of the hearing on Barton's motion to dismiss. *See* A122 (24:2-6, 24:17-19). Relators' failure to move for leave to amend is particularly notable because Barton expressly moved to dismiss *with prejudice*. *See* ECF No. 41 at 2 ("Barton respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice pursuant to Rules 9(b) and 12(b)(6)."); *see also id.* at 16 (requesting the same). Relators were thus on notice from the outset that Barton sought dismissal of their claims with prejudice, yet they still failed to file a motion for leave to amend. Their challenge to the district court's dismissal with prejudice can be rejected on that basis alone.

## 2. Relators failed to support their pre-judgment request for leave to amend.

Relators' belated request at oral argument for leave to amend was also substantively insufficient. When "a request to file an amended complaint consists of nothing more than 'boilerplate sentences stating the well-settled "freely given" standard under which a request for leave to amend is generally analyzed,' a district court 'act[s] well within its discretion when completely disregarding the request.'" *Ge*, 737 F.3d at 128 (quoting *Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 107-08 (1st Cir. 2013)). In *Ge*, for example, this Court affirmed the district court's dismissal with prejudice after the plaintiff "conditionally … state[d] that if the court was inclined to dismiss, then she would like leave to amend." 737 F.3d at 127. As the Court noted, her "conditional request to amend consisted just of two sentences"—one that requested leave to amend "[i]f the Court were to determine that Relator's Complaints are deficient in any regard," and a second reiterating the "liberal amendment policy." *Id.* at 127 n.7. It was not an abuse of discretion for the district court to deny this "boilerplate" request. *Id.* at 128 n.8. The same was true in *Silverstrand Investments*, in which the Court affirmed the district court's dismissal with prejudice when the plaintiffs "failed to provide the district court with the reasons supporting their request and with the substance of possible amendments." 707 F.3d at 107.

Relators in this case similarly did not provide any basis for their pre-judgment request. After full briefing and after listening to the entirety of Barton's argument at the hearing, Relators stated only: "[I]n the event that this Court does not find our arguments persuasive or that it otherwise deem[s] it necessary to dismiss parts of the complaint, we respectfully ask leave to amend the complaint and cure any defects this court deems it to have." A122 (24:2-6); *see also id.* (24:18-19) (repeating the same request). Relators failed to do "the necessary leg work" to show the Court that there was a basis for granting leave to amend. *Silverstrand*, 707 F.3d at 107. They also left Barton entirely in the dark without "a meaningful opportunity" to respond to Relators' proposed amendment. *Id.* at 107-108 (explaining that an undeveloped request for leave to amend risks turning litigation into more "a game of blind man's buff" rather than "a fair contest with the basic issues [of] facts [and law] disclosed to the fullest practical extent") (alterations in original). Thus, this barebones' ask is precisely what this Court has deemed insufficient in other cases.

3. Relators do not accurately describe—or quote from—their cited authorities.

Relators cite several decisions for the proposition that it is an abuse of discretion for a district court to dismiss a complaint with prejudice where the plaintiff has not previously had an opportunity to amend. Opening Br. 13-14. As discussed at length above, this argument presumes that the plaintiff properly requested leave to amend in the first place, which Relators failed to do here. *See supra*, pp. 24-25.

Even putting that aside, however, Relators' cited authorities do not support their position.

Relators first cite *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015), as purportedly "reversing dismissal with prejudice where relator sought leave to amend post-dismissal and had not previously amended." Opening Br. 13. No piece of that description is accurate. *Gadbois* involved whether a relator could supplement his complaint under Rule 15(d) based on two significant developments that arose during the pendency of the appeal. 809 F.3d at 3-4. The decision does not address Rule 15(a) or whether the district court properly dismissed the case with prejudice. *Id.*

The same is true of *Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269 (1st Cir. 2013). Relators describe this Court as concluding that the "district court abused its discretion in denying leave where plaintiffs had not amended before and identified a plausible way to cure defects." Opening Br. 13. While *Juárez* at least involved amendment under Rule 15(a), the decision in no way suggests that a district court necessarily abuses its discretion in denying leave to amend where the plaintiff has not previously had an opportunity to replead his claims. Rather, this Court concluded, based on the facts of the case before it, that the pro se plaintiff should have been permitted to amend her complaint based on the district court's "erroneous

findings" regarding her claims, and further because her allegations appeared plausible more broadly. 708 F.3d at 281.

Finally, Relators represent (at 14) that this Court stated in *Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 758 (1st Cir. 1994), that, quote, the "court must exercise [its] discretion within the context of the liberal amendment policy of Rule 15(a) and the presumption in favor of permitting amendment." This quote does not appear in *Gonzalez*, and Barton has been unable to find it in any other decision, whether from this Court or elsewhere. The purported quote is not even a plausible paraphrase of anything the Court said in *Gonzalez*, which instead involved the question whether the doctrine of res judicata bars the claims of non-parties based on a theory of privity. The case had nothing to do with the standard for amendment under Rule 15(a). *See id.* While it is true enough that Rule 15(a) reflects a "liberal" amendment policy, this Court has otherwise recognized—in a case cited by Relators—that a district court "enjoys significant latitude in deciding whether to grant leave to amend," including based on "futility of amendment." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008). And here, even had Relators properly moved for leave to amend, Relators' post-judgment motion for reconsideration makes clear that any amendment would have been futile. *See infra*, pp. 38-42.

* * *

In sum, Relators have no support for their argument that the district court was required to offer them leave to amend, and it was not an abuse of discretion for the district court to deny Relators' belated, undeveloped request at argument.

## II.  The district court properly denied Relators' motion for reconsideration.

Relators' Rule 59(e) argument is deeply misguided.  Relators argue that it was a per se abuse of discretion for the district court to deny their motion for reconsideration without accompanying explanation.  Opening Br. 14-16.  This Court has repeatedly held the opposite.  Relators do not accurately summarize the authorities they cite in support of their position—including again by relying on purported quotes that do not appear in any opinion Barton has been able to locate from any court anywhere in the country.

On the merits, Relators waived their challenge to the district court's denial of the motion for reconsideration by failing to develop any argument that their purportedly new allegations could cure the deficiencies in their complaint.  And even putting all that to the side, Relators' proposed amended complaint made clear they are not entitled to another bite at the apple.

### A.  Relators misrepresent First Circuit precedent.

Relators' lead argument is that the district court's purported "procedural failure"—*i.e.*, denying Relators' motion for reconsideration without accompanying

explanation—requires reversal.  Opening Br. 16.  That argument runs headlong into controlling First Circuit precedent.  Relators maintain that caselaw from this Court supports their argument, but they rely on quotes that do not exist and cases that have nothing to do with the issue at hand.

1. The district court did not abuse its discretion in denying Relators' motion for reconsideration in a summary order.

Relators argue that the district court abused its discretion in denying their motion for reconsideration without explaining its reasoning.  This Court has repeatedly rejected that argument, including in the context of the FCA specifically.  In *United States ex rel. Ge v. Takeda Pharmaceutical Co.*, for example, the plaintiff twice requested leave to amend, first in her opposition to the defendant's motion to dismiss and later in a motion to amend filed in conjunction with a post-judgment Rule 59(e) motion for reconsideration.  737 F.3d at 127.  The district court denied both requests without explanation:  As this Court recounted, the district court "did not explicitly discuss the request" to amend when resolving the motion to dismiss, and subsequently denied the motion for leave to amend "without opinion." *Id.*  On appeal, the plaintiff—like Relators here (Opening Br. 14)—relied on *Foman v. Davis*, 371 U.S. 178 (1962), to argue that the district court erred by denying her two requests "without a statement of reasons." *Id.* at 128 (further objecting to the lack of "any justifying reason" to support the district court's "outright refusal" to allow amendment).

This Court disagreed. With respect to the initial request, the Court explained that a district court "act[s] well within its discretion when completely disregarding" a "boilerplate" request for leave to amend. 737 F.3d at 128 (citation omitted); *see also* supra, pp. 26-27. In that context, *Foman* did not require anything further of the district court. *See id.* The plaintiff's post-dismissal request had more content, including "several pages of argument," along with "two proposed amended complaints and statistical and anecdotal evidence of the effects of [the defendant's] alleged misconduct." *Id.* at 128 n.8. Even so, the Court emphasized that granting a motion for reconsideration is "an extraordinary remedy," and that the district court could have provided leave to amend only if it acted "first to set aside its judgment pursuant to [the plaintiff's] motion to reconsider under Rule 59(e)." *Id.* at 127-28 (citation omitted). The district court "did not abuse its discretion" in denying that request, even absent an accompanying explanation. *Id.*; *see also Silverstrand*, 707 F.3d 95 at 107 (rejecting the argument that it was "reversible error" for a district court to have "never addressed" the plaintiff's request for leave to amend).

This caselaw forecloses any argument that it was an abuse of discretion for the district court to deny Relators' reconsideration motion in a summary order. Rather, this Court will "defer to the district court's decision if any adequate reason for the denial is apparent on the record." *ACA Fin. Guar. Corp.*, 512 F.3d at 55-56 (citation and internal quotations omitted). And here, Relators' arguments for

amendment were borderline frivolous. *See infra*, pp. 38-42; *see also Ge*, 737 F.3d at 128 (affirming summary denial of motion for reconsideration where the plaintiff could not "plausibly identify some 'manifest error of law' committed by the district court"). The district court was under no obligation to repeat, in response to Relators' redundant and ill-conceived motion for reconsideration, the thorough explanation it already had provided in granting Barton's motion to dismiss.

2. Relators' argument relies on made-up quotes and cited authorities that have nothing to do with the issue at hand.

Notwithstanding this authority, Relators argue that a district court "abuses its discretion when it fails to articulate any rationale for denying" a Rule 59(e) motion. Opening Br. 15; *see also id.* (reiterating the view that a district court abuses its discretion when it denies a Rule 59(e) motion "without explanation"). According to Relators, the district court's supposed "procedural failure" (*i.e.*, the lack of explanation) was enough, "standing alone," to "warrant[] reversal." Opening Br. 16. Relators' argument relies on a set of First Circuit cases that, Relators claim, prevent the district court from issuing a summary denial of a motion for reconsideration. But none of the cited cases addresses this issue, or anything close to it.

To start, this section of Relators' brief includes two more purported quotes that Barton has been unable to locate not only in the cited decisions, but in any opinion anywhere, and that fail even to paraphrase anything said in the cited decisions. Relators quote (at 15) *Davila-Alvarez v. Escuela de Medicina*

33

*Universidad Central del Caribe*, 257 F.3d 58 (1st Cir. 2001), as supposedly stating that a "district court should explain its reasons for denying a motion for reconsideration." But this statement is not from *Davila-Alvarez*—nor, as far as Barton has been able to find, from any other available opinion. More broadly, *Davila-Alvarez* does not support Relators' argument. The district court in *Davila-Alvarez* had dismissed a case for lack of prosecution and then denied the plaintiffs' two follow-on requests for relief from judgment under Rules 60(b)(1) and 60(b)(6). *Id.* at 63. This Court affirmed the district court's rulings, with no discussion of the level of explanation a district court must provide when denying a motion for reconsideration. In fact, the second of the district court's orders—which this Court affirmed—was an unexplained, one-line order. *See* Order, *Davila-Alvarez v. Escuela de Medicina Universidad Central Del Caribe*, No. 3:97-cv-02793-JAF (D.P.R. May 25, 2000), ECF No. 28 (stating in its entirety "[m]atter decided under Fed. R. Civ. P. 60").[2]

Relators also rely (at 16) on this Court's decision in *ACA Financial Guaranty Corp.* for the purported quote that "[t]he trial court must consider whether the proposed amendment would be futile and, if so, explain why." 512 F.3d at 56.

---

[2] The district court's order on the initial motion for reconsideration is not available through Pacer. *See* Opinion and Order, *Davila-Alvarez v. Escuela de Medicina Universidad Central Del Caribe*, No. 3:97-cv-02793-JAF (D.P.R. Mar. 29, 2000), ECF No. 21.

Again, the quoted sentence does not appear in *ACA Financial*, or in any other decision Barton has been able to locate. The cited section of *ACA Financial* also addresses the unrelated question whether the Private Securities Litigation Reform Act modifies the operation of Rule 15(a) in securities cases. *See id.* To the extent it is relevant here, the decision explains that "the district court enjoys significant latitude in deciding whether to grant leave to amend," and further that post-judgment motions to amend are *not* governed by Rule 15(a)'s "liberal" amendment standard— both points that support Barton. *Id.* at 55-56; *see also infra*, pp. 37-42. The decision says nothing about the level of detail that a district court must provide when denying a motion for reconsideration.

Relators mischaracterize their remaining cited authorities, which are relevant, if at all, only in that they emphasize the high hurdle for relief on a motion for reconsideration. In *Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006), this Court reiterated that "a motion for reconsideration is 'an extraordinary remedy which should be used sparingly,'" and that "such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Id.* at 30 (quoting 11 Charles Alan Wright et al., Fed. Prac. & Proc. § 2810.1 (2d ed. 1995)). Relators cite this case as direct support for their assertion that it is an abuse of discretion for a district court to deny a motion for reconsideration without explanation, Opening Br. 15, but the decision says nothing

to that effect.  *See Palmer*, 465 F.3d at 30.  It is the same story with *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 (1st Cir. 2005), which has nothing to do with the level of explanation a district court is required to provide when denying a motion for reconsideration.  Rather, the relevant discussion emphasizes "that it is very difficult to prevail on a Rule 59(e) motion," as the "general rule in this circuit is that the moving party must 'either clearly establish a manifest error of law or must present newly discovered evidence.'"  *Id.* at 7 n.2 (quoting *Pomerleau v. W. Springfield Pub. Schs.*, 362 F.3d 143, 146 n.2 (1st Cir. 2004)).

In short, Relators are wrong that the district court necessarily abused its discretion by resolving the motion for reconsideration without a written order.  *See supra*, pp. 30-32.  In the face of binding First Circuit precedent rejecting Relators' position, Relators have provided a pair of made-up quotations and a set of decisions that actually support the result below.  This Court should reject Relators' reconsideration argument on that basis alone.

### B.    Relators were not entitled to a post-judgment opportunity to amend.

To the extent Relators are raising a distinct argument that the district court substantively erred in denying their motion for reconsideration, that argument fails too.  Relators waived any argument to that effect, their brief relies on a demonstrably incorrect legal standard, and they have shown no entitlement to reconsideration.

### 1. Relators waived any substantive challenge to the district court's reconsideration decision.

Other than briefly asserting that their "Rule 59(e) motion did not merely rehash arguments previously rejected," but rather "challenged specific legal errors in the court's Rule 9(b) analysis," Relators do not provide any support for this argument. *See* Opening Br. 15-16. They do not discuss any specific points raised in their motion for reconsideration, nor do they explain what further allegations they might have provided if given an opportunity to amend. Relators have thus waived any argument on appeal. *See, e.g.*, *3137, LLC*, 126 F.4th at 9 n.4 (appellant waived argument that was "not adequately briefed" on appeal); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (repeating the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

### 2. Relators' cannot take advantage of Rule 15(a) post-judgment.

Waiver aside, Relators invoke the wrong legal standard for their post-judgment request for leave to amend. Relators argue that "where leave to amend is sought in a Rule 59(e) motion, the district court has an independent duty to consider whether amendment would be futile," or to consider whether "Relators acted with undue delay, bad faith, or prejudice to the defendant." Opening Br. 14 (citing *ACA Fin. Guar. Corp.*, 512 F.3d at 56). But that is the standard under Rule 15(a), which directs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

This "liberal" amendment standard is no longer available when plaintiffs fail to move for leave to amend prior to dismissal. *See Ge*, 737 F.3d at 127-28. Rather, as Relators' own cited authority explains, a "more restrictive standard" governs "post-judgment motions to amend." *ACA Fin. Guar. Corp.*, 512 F.3d at 57 (discussing *James v. Watt*, 716 F.2d 71, 78 (1st Cir. 1983) (Breyer, J.)). Otherwise, plaintiffs could "pursue a case to judgment and then, if they lose … reopen the case by amending their complaint to take account of the court's decision." *James*, 716 F.2d at 78. To avoid this tactic, which "would dramatically undermine the ordinary rules governing the finality of judicial decisions," *id.*, "a district court cannot allow an amended pleading where a final judgment has been rendered unless the judgment is first set aside or vacated pursuant to Fed. R. Civ. P. 59 or 60." *Ge*, 737 F.3d at 127 (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 11 (1st Cir. 1998)).

In their motion for reconsideration, Relators cited a Third Circuit decision to support the proposition that "other circuits have held that the inquiry [for post-judgment amendment] turns on the same factors as a traditional motion to amend under Rule 15." A88 (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272-73 (3d Cir. 2001)). Even were Relators accurately describing the caselaw from other circuits, *this* case is governed by this Circuit's "more restrictive standard." *Ge*, 737 F.3d at 127-28. In any event, Relators misrepresent *Cureton*. While the Third Circuit bore "in mind the liberal pleading philosophy of the federal

rules," it noted that, post-judgment, "the interests in judicial economy and finality of litigation may become particularly compelling," and therefore "focus[ed]" its analysis "on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273.

### 3. Relators are not entitled to the "extraordinary remedy" of a grant of reconsideration.

To establish an entitlement to relief on a motion for reconsideration—"an extraordinary remedy"—the "moving party must either clearly establish a manifest error of law or must present newly discovered evidence." *Ge*, 737 F.3d at 127 (citations and internal quotations omitted). Relators failed to make either showing here. Relators did not attempt to identify any new evidence, and their supposed "clear error of law" was that the district court "misapplied the *Duxbury* standard to the present matter." A90. As explained at length above, the district court carefully, and correctly, applied *Duxbury* and this Court's follow-on precedents. *See supra*, pp. 17-22. It is Relators who continually misunderstand what *Duxbury* requires.

Relators argued below in support of their motion for reconsideration that the salient feature of the allegations in *Duxbury* involved "the nature of the kickback scheme described by the relator," which supported an inference that "the resulting fraud was more than merely 'possible.'" A91. But as *Duxbury* makes clear, the allegations that, while a "close call," nevertheless pushed that complaint over the line were the "alleged facts that false claims were in fact filed by the medical

39

providers [relator] identified." 579 F.3d at 30-31.  These facts included, for example, that Mid Columbia Kidney Center "submitted claims to Medicare and was subsequently reimbursed by Medicare approximately $75,000 for the administering of [drug] ProCrit to Mid Columbia Kidney Center patients" after the defendant "provided Mid Columbia Kidney Center with an 'off-invoice' rebate of 5-8% for the purchase of ProCrit."  *Id.* at 31.  The allegations here are not similar.  Relators generally allege that the recruited clients "obtain[] reimbursement from Medicare or other Government-funded health plan[s]" after the client forwards the information for "a Medicare-eligible patient" to Barton, A20-21 (¶¶ 55, 57) but the complaint is entirely lacking reliable allegations to support an inference that Barton caused the submission of false claims to the government.  *See supra*, pp. 17-22.

Nor did Relators identify any such allegations in their proposed amended complaint.  According to Relators, the amendment adds allegations regarding the time period at issue (some point during 2019), the specific government programs to which false claims were allegedly submitted (Medicare, Medicaid, and TRICARE), and provides an example of a Medicare patient "for whom Barton rubber-stamped an unnecessary prescription for genetic cancer tests."  A96.  Relators also represent that "the proposed amendment articulates the grounds for the strong inference that Barton's rubber-stamping scheme resulted in the actual submission of false claims."  *Id.*

These allegations fall far short of the mark. To start, if the allegations in *Duxbury* were a "close call," *see supra*, pp. 15, 39, then providing a year-long timeframe during which the fraud allegedly occurred and boilerplate references to Medicare, Medicaid, and TRICARE is insufficient to meet Rule 9(b)'s particularity requirement. The purpose of alleging "rough time periods" and "specific government programs" is to help narrow which of the many claims submitted to the government by the relevant parties "during the relevant time period were rendered false by [the defendant's] alleged misconduct." *Ge*, 737 F.3d at 121. Identifying a calendar year and the three default government healthcare assistance programs does nothing to help with this narrowing. Relators' minimal allegations about a specific Medicare patient likewise do not move the needle. Among other issues, Relators still fail to allege facts demonstrating that the prescribed tests were unnecessary, let alone that Barton had any awareness that the tests were unnecessary. ECF No. 60-2 at 13 (¶¶ 61-65). As a result, even accepting that "some false claims … were submitted to the government," these allegations still give "rise to only speculation as to whether" *Barton* "caused the filing of false claims with the government." *Kelly*, 827 F.3d at 15 (citations omitted).

Finally, Relators' purported "[m]ost important[]" addition to their allegations (A96) is their conclusory assertion that Barton's clients "pay Barton kickbacks for the signed prescriptions and the purpose of paying Barton for the signed prescription

enables providers to obtain reimbursement from Medicare or other government-health plans," thus leading "to a strong inference that the reimbursement claims were submitted." ECF No. 60-2 at 15 (¶ 76); *see also id.* at 13 (¶ 65) (repeating the same). This allegation suffers from the same problem the district court identified with the original allegations, and the same problem this Court has repeatedly identified in its FCA decisions. Even under the "more accommodating" version of Rule 9(b), the a complaint must include sufficient factual allegations to "strengthen the inference of fraud beyond possibility." *Kelly*, 827 F.3d at 13 (citation omitted). Relators' amended complaint still does not include any "reliable indicia" of fraud, *see supra*, pp. 38-41, and Relators cannot paper over that failure merely by asserting that there exists an illegal kickback scheme. Because Relators' proposed amended complaint, like the original complaint, at most pleads facts to suggest that fraud was "possible," it fails to satisfy the heightened pleading standard of Rule 9(b). *Hagerty*, 844 F.3d at 33. The district court properly denied the motion for reconsideration.

## CONCLUSION

For the foregoing reasons, Barton respectfully requests that the Court affirm the district court's dismissal with prejudice.

September 10, 2025                   Respectfully submitted,

                                    */s/ Jordan Bock*
                                    Jordan Bock (1st Cir. Bar No. 1216631)
                                    Kevin Martin (1st Cir. Bar No. 89611)
                                    Miranda Hooker (1st Cir. Bar No. 105349)
                                    GOODWIN PROCTER LLP
                                    100 Northern Avenue
                                    Boston, MA 02210
                                    (617) 570-1000
                                    jbock@goodwinlaw.com
                                    kmartin@goodwinlaw.com
                                    mhooker@goodwinlaw.com

                                    *Counsel for Defendant-Appellee Barton
                                    Associates, Inc.*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 9,908 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: September 10, 2025

*/s/ Jordan Bock*
Jordan Bock

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2025, I electronically filed the foregoing using the Court's CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

*/s/ Jordan Bock*
Jordan Bock
