No. 25-1309

---

**United States Court of Appeals**
**For the First Circuit**

---

USA ex rel. Solano, et al.,
Plaintiffs-Appellants
v.
Barton Associates, Inc.
Defendants-Appellees

---

On appeal from the United States District Court
for the District of Massachusetts
Civil Action No. 1:20-cv-11231-GAO

---

**Counsel's Response to The Court's Order of January 23, 2026**

---

## I.    Introduction

I respectfully submit this Response to the Court's Order of January 23, 2026, directing me to: (1) explain how and why certain quotations appearing in the Opening and Reply Briefs were erroneous; (2) explain why those errors were not addressed earlier in the proceedings; and (3) explain why sanctions should not be imposed.

As set forth below, several statements in the briefs were improperly presented in quotation marks and attributed to specific decisions when the quoted language did not appear in those opinions. In some instances, the error consisted of presenting accurate paraphrases of a cited authority's reasoning as if they were direct quotations. In other instances, the language reflected accurate statements of governing law that were not properly attributable to the particular cited decision. I regret those errors and acknowledge that they should not have occurred. I recognize that accurate quotation and attribution are fundamental obligations in appellate advocacy and

1

under the rules of professional conduct, and I accept full responsibility for failing to meet that standard here.

At the same time, the errors identified did not involve fabrication of authority, citation to non-existent cases, or knowing misstatement of First Circuit precedent. While some of the erroneous quotations were more serious than others—including instances in which the cited case did not support the proposition attributed to it—the errors were careless and not made with intent to mislead the Court or counsel as to the governing law or the substance of any decision.

Independently of any sanction the Court may impose, I have already adjusted my own briefing practices to ensure that this type of failure does not recur. For all future filings, I have implemented a written, pre-filing checklist that requires a final, line-by-line verification of all quotations and citations against the cited authorities before filing, whether conducted by me personally or, where appropriate, by another attorney or trained staff member. That step addresses the specific breakdown identified here and reinforces the obligations of accuracy and candor owed to the Court.

The sections that follow proceed in four parts. First, I explain how these errors arose in the drafting process. Second, I address why the errors were not fully addressed earlier, including in the Reply Brief and at oral argument. Third, I catalogue each instance in which quoted language was erroneously attributed, distinguishing errors of quotation from errors of attribution, and explaining the nature of each. Finally, I address the question of sanctions and explain why disciplinary measures affecting the clients would be inappropriate, while acknowledging the Court's established authority to impose remedial measures directed at counsel.

## II.  How the Errors Occurred

My briefing process begins with identifying potentially relevant authorities through legal research tools and practice materials, followed by close review of those cases and the preparation of written case notes. The depth of those notes varies depending on the relevance of the authority

to the matter at hand. I then rely on my notes to inform the outline and drafting of the brief. Once drafting begins, I typically work from those research notes and outline rather than from the full text of the opinions, returning to the opinions only selectively as needed during drafting.

In this case, several of the challenged passages reflect synthesized statements of legal principles that were consistent with my understanding of First Circuit law but were incorrectly presented as quotations and attributed to specific cases. Because I do not retain research notes once a brief is finalized, I cannot determine with certainty whether those statements reflected an initial misreading of the cited cases during my review, or whether I read the cases correctly but misread my research notes, which caused the paraphrased material to be carried forward as quoted language or carried over from one case to another.

However, the fact that different quotation and attribution errors appeared in both the opening brief and the reply brief suggests that the source of the problem lay in the underlying research notes, where paraphrased material was mistakenly enclosed in quotation marks and, in some instances, attributed to the wrong authority. The same underlying research notes were relied upon in preparing the Reply Brief and although the specific errors in the Opening Brief were not repeated, other quotation and attribution errors embedded in those notes were not identified and corrected before filing. As a result, similar—though distinct—quotation and attribution errors appeared in the Reply Brief.

The errors identified here did not result from the use of generative artificial intelligence or automated drafting tools. They arose from human error in research synthesis and from a failure to perform adequate final verification before filing. None of the issues identified involved citation to non-existent or hallucinated cases; all cited authorities were real cases I read in my research though some were improperly quoted.

Regardless of when or how the errors were introduced, they should have been caught and corrected before filing. My usual practice has long included a final verification of quotations and citations against the cited authorities, but in this instance that verification step was not performed with respect to either the Opening Brief or the Reply Brief. While the Opening Brief was finalized during a period of transition between firms, the Reply Brief was not, and I do not attribute the failure to catch the Reply Brief errors to any external circumstance. In both instances, the failure was mine and mine alone.

The errors were unintentional, and I was not aware of them at the time of filing. They reflect a breakdown in research note-taking and final verification, not an effort to mislead the Court or counsel or to attribute language to authorities that did not support the propositions for which they were cited. I accept full responsibility for that failure and I deeply regret that this occurred.

### III.    Why the Errors Were Not Corrected Earlier

After Appellee identified these issues in its Response Brief, I did not file a separate correction or errata, nor did I address the errors with the level of clarity and directness that candor required. That was a mistake in judgment on my part.

At the time, my focus was on addressing the substantive legal issues presented by the appeal. I believed—incorrectly—that because the challenged passages reflected legal principles I understood to be consistent with First Circuit precedent, and because I did not believe the errors affected the governing law or the outcome of the appeal, it was sufficient to address the substance of Appellee's counterarguments rather than the citation issues it raised.  That belief was wrong. Once Appellee raised these issues, my obligation was not merely to defend the underlying legal propositions and the appellate position they were marshalled to support, but to acknowledge clearly and expressly where errors occurred.

In the Reply Brief, I attempted to address the issues raised by Appellee, but I did so inadequately. I did not repeat the erroneous quotations and instead shifted the discussion to the cited cases' actual holdings or procedural posture. However, I did not expressly identify or concede the quotation errors, nor did I clearly acknowledge that certain language had been incorrectly presented as quotations. In hindsight, that response was inadequate. I should have stated plainly which citations were erroneous, explained the nature of the errors, and corrected the record directly rather than assuming that addressing the substance of the legal principles alone was sufficient.

Regrettably, I also did not meaningfully address these issues during oral argument except when asked by the Court. By way of explanation and not excuse, this was my first appellate argument and my first appearance before the United States Court of Appeals for the First Circuit. I mismanaged my time and focused on the merits of the appeal and, as a result, I did not independently raise or address these issues before my time expired. Nervousness and inexperience contributed to that failure, but they do not excuse it. Once the issue was raised in briefing, I should have ensured that it was addressed forthrightly at oral argument regardless of time constraints.

Taken together, these failures reflect an insufficient appreciation of the breadth of the duty of candor owed to the Court once errors are identified. Even where counsel believes an error to be non-dispositive, that duty requires the error to be clearly acknowledged and corrected. I did not meet that obligation here, and I accept responsibility for my failure.

## IV.   Catalogue of Errors

The Court directed me to explain why and how the challenged citations were included in the briefs and why they were not addressed earlier. This catalogue includes the specific passages identified by Appellee in its Response Brief, the additional instances referenced more generally at oral argument including further errors discovered upon my own subsequent review.

- *Gonzalez v. Banco Central Corp.*, 27 F.3d 751 (1st Cir. 1994)

In the Opening Brief, I wrote:

> As the United States Supreme Court made clear in *Foman*, a court's failure to articulate any reason for denying leave—particularly when the motion is timely and identifies new facts that would cure the defect—requires reversal. 371 U.S. at 182. *See also Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 (1st Cir. 1994) ("[T]he court must exercise [its] discretion within the context of the liberal amendment policy of Rule 15(a) and the presumption in favor of permitting amendment.").

Br. at 14. The quotation in the parenthetical does not appear in *Gonzalez*. Its inclusion as a quoted statement attributed to *Gonzalez* was erroneous and should not have occurred.

This error was not limited to the use of quotation marks. The legal proposition articulated in the quoted sentence also cannot be fairly derived from *Gonzalez's* holding or reasoning. That decision did not address Rule 15(a), the standard governing leave to amend, or the exercise of discretion in that context. Rather, *Gonzalez* concerned the application of claim-preclusion principles and did not speak to the amendment framework for which it was cited.

At the same time, the quoted sentence reflected a fair synthesized statement of governing law drawn from *Foman v. Davis*, 371 U.S. 178 (1962) and subsequent First Circuit cases applying that standard. While the legal principle itself accurately reflects settled law, it was regrettably and incorrectly presented as a quotation from *Gonzalez*.

This error was not repeated in the Reply Brief where *Gonzalez* was not cited at all.

- *Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58 (1st Cir. 2001)

In the Opening Brief, I wrote:

> The First Circuit repeatedly emphasized that Rule 59(e) motions must be considered on their merits, and a district court abuses its discretion when it fails to articulate any rationale for denying one. *Marie,* 402 F.3d at 7–8; see also *Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58 (1st

Cir. 2001) ("A district court should explain its reasons for denying a motion for reconsideration.").

Br. at 15. That quotation in the parenthetical does not appear in *Dávila-Álvarez*, and its presentation as a quotation attributed to that decision was erroneous.

*Dávila-Álvarez* does not articulate a categorical rule requiring district courts to explain their reasons for denying motions for reconsideration. The quoted sentence was not intended to assert such a rule. Rather, it reflected a generalized appellate principle concerning discretionary rulings and the importance, in some circumstances, of an articulated rationale to permit meaningful appellate review. To the extent the language could be read to suggest a categorical or *per se* requirement, attribution of such a rule to *Dávila-Álvarez* would be erroneous.

In the Reply Brief, I did not repeat the erroneous quotation or insist on its accuracy. I acknowledged Appellee's criticism of the citation and shifted the discussion to *Dávila-Álvarez's* actual procedural posture and relevance.

- *ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008)

In the Opening Brief, I wrote:

> Even if the court were unpersuaded by Relators' argument for reconsideration, it was required to assess whether amendment would be futile before refusing to allow it. *See ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 56 (1st Cir. 2008) ("[T]he trial court must consider whether the proposed amendment would be futile and, if so, explain why.").

Br. at 14. That quotation in the parentheses does not appear in *ACA Financial.* Its presentation as a quotation attributed to that decision was inaccurate.

Although *ACA Financial* discusses Rule 15(a), futility, and the discretionary framework governing leave to amend, it does not state or imply the quoted proposition. The cited portion of the opinion addresses whether the Private Securities Litigation Reform Act alters the liberal amendment policy of Rule 15(a), which the Court held it does not. The court ultimately affirmed

denial of leave to amend based on the case's procedural posture, including the fact that leave to amend had not been sought in the district court.

The inaccurate quote instead reflected a synthesized formulation drawn from the interaction between *Foman v. Davis* and subsequent First Circuit cases reviewing denials of leave to amend for abuse of discretion. While the proposition captures a principle that often informs appellate review—particularly where futility is invoked—it was incorrectly attributed to *ACA Financial*.

In the Reply Brief, I did not repeat the quoted language or contend that *ACA Financial* itself announced that rule. I cited the decision more generally for its reaffirmation of the liberal amendment policy and the discretionary framework governing leave to amend.

- District Court Memorandum and Order (ECF No. 75)

In the Opening Brief, I wrote:

> [The District Court] criticized the Relators for failing to identify "a single claim" that was "actually submitted for reimbursement." (JA 75).

Br. at 12. Neither of the quoted phrases—"a single claim" or "actually submitted for reimbursement"—appears verbatim in the District Court's opinion. Their presentation in quotation marks as if drawn directly from the opinion was an error.

The sentence was intended to summarize the District Court's Rule 9(b) analysis, in which it faulted the complaint for failing to allege facts tying the alleged conduct to claims actually submitted to government payors. While that characterization reflected the court's reasoning, the language should have been presented as paraphrase rather than as quoted text.

In the Reply Brief, I acknowledged Appellee's challenge to the quoted language and did not insist that the phrases appeared in the district court's opinion. I maintained, however, that the language fairly characterized the court's reasoning.

- *United States ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 579 F.3d 13 (1st Cir. 2009)

In the Reply Brief, I wrote:

> The Court held these allegations sufficient because while the relator could not provide claim-by-claim details of the tainted prescriptions, his "allegations provide the necessary indicia of reliability that false claims were submitted." 579 F.3d at 30. *Duxbury* thus crystallized the flexible standard: a relator may meet Rule 9(b) by pleading particular details of the scheme paired with reliable indicia that false claims were submitted, without identifying specific patients or specific reimbursement claims.

Reply at 3. The quoted phrase does not appear in *Duxbury*. Its placement in quotation marks as if drawn directly from the opinion was a mistake.

The sentence was intended to summarize *Duxbury's* Rule 9(b) analysis, in which the Court held that allegations describing a detailed scheme, coupled with reliable indicia supporting an inference that claims were actually submitted, can satisfy Rule 9(b) even in the absence of claim-by-claim detail. The phrase in question should have been presented as a paraphrase and should not have been set within quotation marks.

Later in the Reply, I also placed in quotation marks the phrase "too conclusory" in describing *Duxbury's* discussion of cases in which allegations failed to support an inference of claim submission. Reply at 7. That phrasing likewise does not appear in *Duxbury* and should not have been set within quotation marks as it was intended as a paraphrase of the Court's reasoning.

- *United States ex rel. Lawton v. Takeda Pharmaceutical Co.*, 842 F.3d 125 (1st Cir. 2016)

In the Reply, I wrote about *Lawton*:

> This Court held those allegations sufficient, explaining that Rule 9(b) "does not require a relator to plead details of fraudulent claims when the relator alleges particular details of a scheme … paired with reliable indicia that lead to a strong inference that claims were actually submitted." 842 F.3d at 130.

Reply at 3. The quoted language does not appear in *Lawton*. Its placement in quotation marks as if drawn directly from the opinion was regrettable

The sentence was intended to summarize *Lawton*'s articulation of the Rule 9(b) standard in False Claims Act suits alleging third-party inducement, including its discussion of scheme allegations paired with reliable indicia supporting an inference of claim submission. The language should have been presented as paraphrase rather than as quoted text.

- *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29 (1st Cir. 2017)

In the Reply, I wrote about *Nargol:*

> This Court held the allegations sufficient because "these facts make it highly plausible that false claims were submitted." 865 F.3d at 39. The Court emphasized that requiring claim-by-claim proof in such circumstances "would shield bad actors from FCA liability merely because relators lack access to billing records." Id.

Reply at 4. The first quoted phrase—"these facts make it highly plausible that false claims were submitted"—does not appear in *Nargol*. Its placement in quotation marks as if drawn directly from the opinion should not have occurred. The sentence was intended to paraphrase the court's reasoning that the alleged facts supported a strong inference of claim submission, but it should not have been presented as quoted text

The second quoted phrase—"would shield bad actors from FCA liability merely because relators lack access to billing records"—likewise does not appear in *Nargol*. More importantly, *Nargol* does not articulate that particular rationale for this Circuit's flexible 9(b) standard in FCA cases alleging third-party inducement to submit false claims. Its attribution to *Nargol* was therefore erroneous and regrettable. The language should not have been presented as a quotation and should have been sourced, if at all, to other authority rather than to *Nargol*.

- *United States ex rel. Hagerty v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016)

In the Reply, I wrote:

> [The Hagerty] relator described a sales and kickback scheme but failed to allege that it ever succeeded. The complaint did not identify any physician who accepted inducements, any patient who received the device as a result, or any facts linking inducements to federal reimbursement. Instead, it rested on the conclusory assertion that claims "must have been submitted." This Court found those allegations "untethered" to reimbursement and affirmed dismissal. 844 F.3d at 33.

Reply at 6. The quoted phrase and the quoted word do not appear in *Hagerty*. Their presentation as direct quotations was not correct.

The language was intended to summarize *Hagerty's* Rule 9(b) analysis, in which the Court affirmed dismissal where the relator failed to allege facts connecting the alleged misconduct to the submission of false claims for reimbursement. While the characterization accurately reflected the Court's reasoning, it should have been presented as paraphrase rather than as quoted text.

- *Gray v. Evercore Restructuring LLC*, 544 F.3d 320 (1st Cir. 2008)

In the Reply, I wrote that *Gray* stated that:

> "a request to amend embedded in an opposition … does not constitute a motion to amend." Id. at 327.

Reply at 11. That sentence does not appear in *Gray*. Its presentation as a quoted statement attributed to the court was improper.

The quoted sentence was intended to summarize *Gray's* holding that a bare request for leave to amend included in an opposition to a dispositive motion does not constitute a motion to amend under Rule 15(a), and that a district court cannot be faulted for failing to grant leave *sua sponte* where no motion was made. While that characterization accurately reflected the rule applied in *Gray*, it should not have been presented in quotation marks as if drawn directly from the opinion.

Notably, the phrasing I used in the Reply was arguably less favorable to my clients' position than the Court's own discussion in *Gray* and did not embellish or distort the decision's holding in

11

their favor. The error here was one of form—i.e. quotation versus paraphrase—not of substance or indicative of an intent to mislead.

- *Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006)

In the Reply Brief, I wrote:

> As this Court has further explained, discretion is not unbounded but "circumscribed by settled principles of law." *Palmer v. Champion Mortgage,* 465 F.3d 24, 30 (1st Cir. 2006).

Reply at 12. The quoted phrase does not appear in *Palmer*. Its presentation as a quoted statement attributed to that decision was not accurate.

The sentence was intended to paraphrase *Palmer*'s discussion of abuse-of-discretion review and the principle that judicial discretion is constrained by governing legal standards. The language should have been presented as paraphrase rather than as quoted text.

The foregoing catalogue reflects a range of quotation and attribution errors of varying seriousness, from errors of quotation form to instances in which synthesized legal propositions were misattributed to particular authorities.

## V.  Sanctions

I recognize that this Court has the authority to impose sanctions for the aforementioned violations. The errors identified in the catalogue above were serious and should not have occurred. The question, however, is not whether the conduct was improper, but what response is appropriate under these circumstances.

As explained above, the errors reflected failures of care and judgment, not fabrication of authority or intent to deceive counsel or the Court. While these errors were serious, none were made to mislead counsel or the Court in the substantive issues presented in this case. This matters when assessing proportionality for purposes of sanctions.

Sanctions affecting the clients would be inappropriate. The clients played no role in researching, drafting, reviewing, or filing the briefs at issue. They neither caused nor could have prevented the errors identified here. Any sanction that operates to their detriment would unfairly punish innocent parties for counsel's mistakes and would not further the purposes of deterrence or professional accountability.

Nor did the errors deprive the Court of adversarial presentation. Appellee identified the challenged quotations in its briefing and argued their significance fully. The Court was thus aware of the issues and able to evaluate the cited authorities independently. Although this does not excuse the errors, it bears on the extent of any prejudice to the adjudicative process.

I have been practicing law for nearly thirteen years and am admitted to practice in good standing in two states. During that time, I have drafted and filed many briefs in state and federal courts across multiple jurisdictions. I have not previously been disciplined, sanctioned or otherwise cited for issues similar to the issues raised herein. The errors identified above represent an isolated albeit careless departure from my usual practice, and are in no way a recurring pattern of conduct.

Respectfully, if the Court concludes that a sanction is warranted, it should be directed at counsel rather than the clients and should be remedial rather than punitive. I believe that measures such as required continuing legal education focused on appellate advocacy, citation practices, or the duty of candor would directly address the deficiencies identified here and reduce the risk of recurrence. I would accept and comply with any measure the Court deems appropriate.

## VI. Conclusion

I regret the errors acknowledged herein and acknowledge that they reflect failures in care and judgment for which I am solely and fully responsible. In response to the Court's Order, I have catalogued and confirmed the instances raised by Appellee as well as additional errors discovered upon further review. I have also explained how these errors occurred, why they were not corrected

earlier, and why client-directed sanctions would be inappropriate. I appreciate the seriousness with which the Court has raised these issues and remain committed to meeting the standards of accuracy and candor required in appellate practice before this Court.

February 9, 2026                                             Respectfully,

                                                             /s/ Christopher Furlong

                                                              Christopher Furlong, Esq.